Good morning, Your Honours. My name is Serge Soni. I represent the plaintiffs in this action. This is an appeal from a judgment pursuant to Rule 12. It's a pleadings case. This court reviews such judgments de novo. All well-pledged allegations of the claims are deemed true. All the parties seem to agree, as did the judge, but in fact, in application, that did not occur. What did occur is that the court reviewed and evaluated the claims, made certain findings that were factual in nature, decided facts that were disputed between the parties, misconstrued the law, and misapplied it. The result was dismissal of all ten claims without leave to amend. The claims in this case fall into two categories, and I think the District Court's treatment of them in that manner, as derivative claims and individual direct claims, is helpful, and I would follow and track that analysis. In connection with the derivative claims, the court found four bases for rejecting them all. First, a lack of standing as to UI unto infinity under ORS 63-801. Second, a lack of standing under FRCP 23.1. Third, as restituted Codd M-4 for mootness. I'll address each of those and then turn to the direct claims. The court found that the plaintiffs did adequately plead and did have standing to represent SSSC, which is the sole member of UI. It, however, held that under 63-801, a suit on behalf of UI could only be filed by its member, namely SSSC. SSSC is a corporate entity. Corporate entities act only through their directors. In this particular case, the only non-conflicted directors were the plaintiffs in this case. Except the problem was that they were directors. Your provision, you say they should have been directors, but that's different from saying that they were the directors. That's not actually true, Your Honor. We contended, maintained, that they were directors in fact at the time that Yogi Bhajan passed away and designated them to be directors. There was no further action required. It was self-executing. Nobody had to run a vote. Nobody had to approve it. He had absolute authority until he passed. And the bylaws expressly provided that the successor directors would be those that he appointed. The plaintiffs were among those that he did appoint. Consequently, as directors, and those allegations must be treated as true on a motion to dismiss under 12b-1 and 12b-6. And they were not treated as true. Instead, what was contended and what was argued is that the plaintiffs were only seeking to be appointed to be directors when in fact they were seeking to be recognized for the directorship that they held by virtue of Yogi Bhajan's passing and declaration that they should be appointed. As directors of SSSC, the plaintiffs had standing to sue in the name of SSSC, which is a member of UI. A corporation can only act through its directors. Equity regards as being done that which ought to have been done. But for the actions of the defendants in this case, they are and would have continued to be serving as directors. In the case of BBG, she had been appointed a director back in 2004 and had never been allowed to actually take office and participate in that role. She has never been removed from that position. There has been no action by the board impairing her ability to do so. Consequently, we believe that the court was wrong in connection with its finding that these plaintiffs lacked standing under 63-801 to represent UI. The second basis that the court relied upon was 23.1 of the federal rules. And in that regard, the court said and found that there was economic antagonism which precluded fair and adequate representation of SSSC and UI by the plaintiffs. It cited the fact that BBG had an action pending against a subsidiary of UI regarding the ownership of certain intellectual property. But that dispute had been resolved in her favor. The arbitrators had declared that she, in fact, was the owner of those rights. They also contended that there were other actions pending. But the mere fact that these other actions may have been pending does not establish economic antagonism. Those actions did not relate in any way to SSSC or UI. They did not relate to the issues in this case. And they simply don't establish any vindictiveness or any improper intent. But I thought the other problem, the bigger problem, was that this suit was both personal and derivative and that the personal actions were, to some degree, against the entities as defendants. There are claims that are personal in nature by the plaintiffs. They are direct claims. Right. But a representative plaintiff in a derivative action is allowed to maintain personal claims. There is an analysis under Larson that is made as to whether those claims predominate, whether they have an overbearing influence on the case and so forth. But that requires a rather detailed analysis under Larson, which was never conducted by the court. And it requires a factual underpinning, which cannot be evaluated on a Rule 12 motion, where you're bound to the four corners of the complaint. So to the extent that the court relied on 23.1 at a time when no answer had been filed, no discovery had been permitted or conducted, it's simply improper. There simply is no basis on the face of the complaint for the court to have concluded that the plaintiffs had an economic antagonism or that they couldn't fairly and adequately represent SSSC and UI. And remember, fair and adequate representation is a question of fact. It's clearly disputed. The allegations of the complaint must be deemed true. And if deemed true, there is no basis for those conclusions. And so the court was simply wrong in relying on 23.1 as a basis to deny, to grant the motions and to dismiss the action. The third basis, Your Honors, was res judicata. In particular, the court claimed that the private plaintiffs and the Attorney General obtained settlement from the individual defendants. And therefore, that bars this case. The plaintiffs in this case were never part or party in the state court action. They simply weren't. The corporations, SSSC and UI, were not parties to the underlying action. They were not named. They were not a plaintiff. They were not named as defendants. They were not named as nominal defendants. That action in the state court was brought by a number of ministers who had been disenfranchised and sought to assert special interest standing against. But it also involved the state. I'm sorry? It also involved the state. And the state made change and the defendants made change. And the state was essentially acting on behalf of the entities. Well, let's talk about that. The state certainly did intervene in the action. The state did not bring the action in the name of SSSC or UI. It brought it in its own name under the authority that the statute provides for its supervisory function over charitable organizations. It did not sue SSSC or UI. It did not sue on behalf of SSSC or UI. It did not ask to be confirmed as a derivative plaintiff. It did not move under class action provisions. All it sought was to exercise its supervisory powers, and through those supervisory powers to make a determination that the charitable organizations were functioning as they were required to function under their operating agreements and bylaws. There is absolutely no basis for a finding of res judicata where the parties are different, the issues are different, and the court's analysis is simply lacking in a showing that all of the issues raised in this action had been previously decided or that issue or claim preclusion should apply. The next argument that the court made, Your Honors, is mootness, and that arises out of the settlement that occurred in the state court action. Not all of the relief that plaintiffs in this case seek was addressed in any of those settlements or in the underlying case. The settlements that did take place were collusive in nature. The defendants secured agreements from the private plaintiffs who were ministers, not SSSC and not UI, who on their own behalf were seeking to secure the benefits that SSSC and UI were preserving for them in trust. The settlement agreement provided that the wrongdoers would appoint a slate of directors, a new slate of directors selected by the private plaintiffs, and that new slate of directors would then ratify the settlement agreement and indemnify the wrongdoers. That's clearly a collusive settlement, Your Honors, and it does not moot the issues, particularly because. What do you mean by collusive? Any settlement is a settlement, i.e., people agree to each other. In that sense, they collude. But in what other sense is it collusive? It secures an express indemnity. It requires the other party to ratify the settlement. It presumes that the slate of new directors provided by the private plaintiffs in the state court action can lawfully be appointed to the board after the state court had already determined that the wrongdoers, the then sitting board of directors, had breached their fiduciary duties and were disqualified from acting as directors. So we've got a judicial determination that the sitting board is illegal, is acted wrongly. They then go ahead and replace, volunteer to resign and replace with a new board. That's an action they cannot engage in. They cannot commit. So this is a collusive settlement that deprived the ability of a lawful board to be appointed. The action, the settlement is. I'm sorry. You're going to run out of time. I'm careful on your direct claims. Certainly I am. Let me address you. I appreciate your organization. I just want to make sure you get to the direct claims. I appreciate it. I know I would probably want to save the rest, but let me address it. Could you go into the first amendment issues and how they. Sure. The court said that, firstly, the court did not rely on Rosanna to board. The court instead said that there was. It doesn't matter what the court relied on. Let's just talk about the issues. Certainly. There is no authority anywhere that says that a ministerial exception affects the court's subject matter jurisdiction. In fact, all of the cases provide that a ministerial exception is an affirmative defense that can be raised against a claim. Rosanna to board says it. Kedroff says it. Servian says it. There are a dozen other cases that follow that. Ewing says it. That's the case that Judge Fischer was involved in back in 2004. The reality is that. That jurisdiction was just for the stated cause of action in light of the first amendment concerns here. It can only be raised as an affirmative defense, and there was no answer filed. We are at the pleading stage. That first amendment complaint has been filed. No answer has been filed. And the court instead said there is a ministerial exception, and therefore I'm going to dismiss your claims. That's simply wrong. On its face, all that was established by the complaint is that there is a board that was supposed to be appointed by YB that was designated by him that was never allowed to take office. It had nothing to do with religious criteria. The fact that some of these people may be ministers does not make it a religious issue. And the fact that we're at a pleading stage, the court should have denied the motion, allowed an answer to be filed if they had raised a ministerial exception defense. There would have been an opportunity to conduct some discovery, and they could have brought a summary judgment motion if they could bear out what they claimed. That did not happen. It was error of the court to grant the motion on the basis of ministerial exception when every authority, including Supreme Court authority, says that the exception relates to an affirmative defense and does not relate to subject matter jurisdiction. Let's assume that we didn't agree with you on that one. Why then, given the circumstances that are in the complaint and exhibits, if we reach the merits of the ministerial exception, why wouldn't it apply here? Neutral principles of law apply to the issue here. This is a question of corporate governance documents. Charitable organizations, including religious organizations, are required to maintain those. The state requires them to abide by them. The attorney general is vested with power to enforce that. And fact did. No, he did not. Well, within his rights. In other words, in terms of the First Amendment argument, the fact is that that whole proceeding went forward. I gather that there were issues raised with regard to remedy as to similar First Amendment issues, but there's a long 40-page or so opinion by the trial court in that case, which would seem to have, if there is a First Amendment problem, they have the same problem. And this is part of the difficulty that we have. In the underlying case, Judge Roberts ruled that the board had committed breaches of fiduciary duty. The issue then came as to remedies. There was extensive effort made to get the arms around the remedies issue and whether or not the board could be removed. Nobody in that proceeding, not even the attorney general, argued that this was not an interference with a religious organization's decisions to choose who could run that organization. This was, in fact, the remedy that should have been sought and is being sought in this case, is that the bylaws and the operating agreements of those organizations be enforced. And the only person who could declare who the next board was going to be was YB, and he did. And that directive was not followed. The attorney general simply did not do his job in requiring that the corporate governance documents be followed, which is his duty to require. Instead, they all got confused with, oh, we're asking for a removal of a board of a religious organization, when, in fact, it was not a board. It was invalid. It was unauthorized from the day that Yogi Bhajan passed away, because there's a self-executing directive in the bylaws that says there's a new board that I will designate. Do you want to save any time? Let me save my time. Thank you. May it please the Court, Paul Southwick on behalf of Unto Infinity, Siri Singh Saab Corporation, and the individual CALSA defendants other than Siri Ramkar-CALSA. Other than whom, sorry? Other than Siri Ramkar-CALSA, one of the individual defendants in this case. He's not here. That individual defendant is represented by a separate attorney who's not at council table. This case is about derivative and direct claims brought by the widow and children of the leader of the Sikh Dharma religion against the religious boards and their former members, boards that constitute the religious and administrative hierarchy of the Sikh Dharma faith. The district court below dismissed all derivative actions, all derivative claims that were brought against the former board members for three reasons that opposing counsel addressed before you today, standing, claim preclusion, and mootness. District court dismissed all direct claims on the basis of both the church autonomy doctrine and the ministerial exception of the First Amendment, disposing essentially of all claims against all defendants for one or more of these four grounds. Unless the court has specific questions, I'll address them in the order in which they've been presented in our briefs and by opposing counsel. To begin, the- I do want you to get to the First Amendment issues at some opportune moment. Certainly I will. In terms of standing, the district court found that both plaintiffs lacked statutory standing under Oregon statutes, specifically with respect to UI, because the complaint was devoid of any allegations that any of the plaintiffs were members of Unto Infinity. With respect to SSSC, which is a religious nonprofit corporation, contrary to opposing counsel's statements, the court did not find that there was standing. The court declined to address whether there was standing or not under ORS 65-174. However, with respect to all plaintiffs, whether they were advocating standing on behalf of Unto Infinity or Siri Singh Saab Corporation, the court held that FRCP 23-1 barred standing for principally two reasons. First, that the plaintiffs in this case are not disinterested plaintiffs. They have significant direct claims against both the nonprofit entities as well as the former board members in this very action. The most significant of which is that they essentially request the court to give them complete control of Unto Infinity and Siri Singh Saab Corporation, which are at the top of the administrative chain in the hierarchy of the Sikh Dharma family of entities. In addition, they seek monetary compensation. So that was one of the bases for economic antagonism. The second was a myriad of numerous suits in multiple jurisdictions brought by Plaintiff BBG and at least one of her children. What about counsel's argument about this being 1286 and there were factual issues? The response to that, Your Honor, is that in this case, the plaintiffs attached numerous documents as exhibits to both their original complaint as well as the first amended complaint and proposed second amended complaint, and the party submitted additional numerous documents with their motions to dismiss, including requests for judicial notice. So the court had a complete record before it in which to adjudicate the standing issues, claim preclusion, mootness, as well as the first amendment issues. The settlement agreement is part of the record. The findings and conclusions and the complaints in the state trial are part of the record. The court orders approving the settlement both by the state court and a bankruptcy judge and a collateral bankruptcy proceeding are all part of the record of the court. As well on the first amendment issues, the bylaws, articles, and operating agreements for the religious non-profits are all part of the record for the court. So did the court expressly treat this as, in effect, a summary judgment motion? No. The court treated this as a motion to dismiss for failure to state a claim and lack of subject matter jurisdiction based on the allegations in the complaint as well as. . . You've answered my question. Moving on to the responding to plaintiff's assertion with respect to the underlying court action or the, excuse me, the arbitration case brought by BBG and some of the other litigation opposing counsel said, well, those cases have nothing to do with this case. Well, I beg to differ. If you look at Excerpt of Record 277, the plaintiffs acknowledged that the parties, including the plaintiffs in this case, attempted, and this is a quote, attempted to reach global resolution to a myriad of cases. So this is precisely the reason why Judge Mossman found that the plaintiffs are not fair and adequate representatives because they essentially are using or could be using this litigation as leverage to settle the myriad of other cases that they have against both the nonprofit entities. . . Which are still pending now. Many of those cases, I believe, most if not all of those cases, has, as of today's date, been settled. But at the time of the filing of these complaints, they were certainly still open. Many of those cases remained open. Where does that leave things if there's, in fact, not . . . I mean, is that just proof of their economic antagonism, even if the cases are over, does it matter? Or what? No, the economic antagonism remains because the principal reason for the finding was that there are direct claims in this very action. And that is the most significant factor to determine that plaintiffs are not disinterested. Even if the court were to find that they were directors that have statutory standing, we're not talking about a disinterested director who is solely bringing a claim on behalf of a nonprofit. We're talking about plaintiffs who all have significant direct personal interests and personal claims in this very dispute. I'd like to move on to the claim preclusion argument. The principal basis for our claim preclusion argument is that . . . In what sense? Well, I doubt if it could apply to the lawyers, for example. So, in terms of the lawyers, the lawyers who did not participate in the state court action, it would generally not apply to. However, there are documents in the record, at least with respect to the Schwabe defendants. And if Mr. or Ms. Watts wish to address this further, I'll look over and see if they are signaling me. But there are records that UntoInfinity and Siri Simtsov have actually brought their own actions against the Schwabe defendants. And those complaints were part of the record below. So, at least with respect . . . That's not race judicata. I mean, that's just a different case. What's that? That's not race judicata. Or Clara Westop or anything else. It's race judicata to the extent that, as with the state case, there was a claim brought either . . . It's a claim, but there's no judgment. Right. So, there's not race judicata. Well, if those actions were resolved with an order on the merits, then they would be barred by race judicata. But they weren't. So, let's go back to where I started from. The argument doesn't pertain to the lawyers. On the record that's before the court, the argument would pertain to any party that was a party to the state court action, which did not include the lawyers. However, the standing arguments do apply universally to all defendants. And with respect to the state court action, it was settled and there was an adjudication on the merits. Well, it would have to be . . . It wouldn't be claim preclusion because the BG and the current plaintiff's claims as such weren't litigated, right? They were, Your Honor. The question is not were BBG and the children present as individuals. I'm not asking that, but the contention that they should have been on the board and all that was not litigated. So, in terms of the relief for board seats and monetary compensation, we're not claiming that claim preclusion bars those claims. Solely, our main argument, our only argument on this issue is that all derivative claims are barred by claim preclusion because they were brought by the private plaintiffs and the state of Oregon in a derivative capacity. And in the lower, in the state court case, there were no direct claims for board seats or monetary compensation sought by either the attorney general or the private plaintiffs in that case. And so, for those reasons, because we had a claim that was settled, we had not only a settlement, but we had court approval of the settlement by both a state court judge and a bankruptcy court judge. That is, which would be the force, the moral force of those orders, which would be put into question if the relief requested in this case was granted. We had those orders, and we had a final adjudication on the merits in that the claims were all dismissed with prejudice. On to the mootness argument, Your Honor. There is no occasion for meaningful relief in this case. I'd like to point to the excerpt of record 927 to 928, which is the Global Settlement Agreement. Unto Infinity and Serafsim Saab Corporation, the two religious entities that plaintiffs claimed to bring derivative claims on behalf of, they were parties to the settlement, the Global Settlement Agreement, and they themselves directly released all of the EastWest Tea Company defendants, all of the individual CASA directors from Unto Infinity and Serafsim Saab. So as entities themselves, they have already released the defendants that plaintiffs are attempting to sue in this case. Moreover, there are indemnity provisions in which, if any relief is granted in this case, the religious nonprofits are going to be the entities that are going to pay for it. So for those reasons, there can be no meaningful relief in this case. Unless the Court has any questions with respect to the systemic standing, mootness, or claim preclusion arguments, I'll go ahead and move into the First Amendment issues. With respect to the First Amendment, we rely on the Church Autonomy Doctrine as well as the Ministerial Exception. The Church Autonomy Doctrine... Let me first start, just to see how this... Right now, in fact, there was this whole proceeding in state court, which I gather your position on... If you're right about this, that whole proceeding should never have happened. Is that right? No. No, Your Honor. Why? So if we're speaking strictly about the First Amendment, the state court action avoided First Amendment concerns. Why? Because the relief that was granted... All right, but in this case, we can worry about the relief when we get to the relief. It's not an argument for throwing the case out then. So it is not an argument for throwing out the derivative claims? No, I understand that, but in that case, still, the ultimate aim, or at least some of it, had to do with whether these people who purported to be the directors were, in fact, the directors. If the relief sought in a state court action was direct relief to get board seats on religious boards and to get compensation for the time that they should have served on those boards, then that relief would have been barred in the state case. The result was to completely redo the governance, the composition of the governance boards. That was purely a decision amongst the religious community itself to resolve a very tricky religious dispute without having to get into First Amendment violations. So the case, what the case did, it allowed the plaintiffs and the state of Oregon to recover the money that was alleged to have been squandered with the sale of the church's assets. It recovered those assets. The state court had the power to do that, and this court would have the power to do that if it hadn't already been done below. But what that court lacked is the power to essentially pick the winners and the losers in a battle for control over the religious hierarchy of this faith. And so what the community did is they said, all right, well, this is not something that a court can give us relief, so let's get to the settlement table, let's get a mediator in here, and let's resolve this dispute. And that's precisely what they did. And that was really the only constitutionally permissible way for this dispute to have been resolved. The Church Autonomy Doctrine is based on one Supreme Court case that we rely on principally, which is the Serbian Eastern Orthodox case. And in that case, it was a dispute that concerned a property dispute, but the court determined that in order to resolve this property dispute, it's really a dispute over defrocking a bishop and who has control over a religion. And the court said in that case, even if the religion did not follow its bylaws, its articles, its own procedures for deciding who is going to be the next bishop, the court cannot apply neutral principles with respect to an internal leadership or an internal governance dispute. And this court in the Mokhtar case, the Ninth Circuit, affirmed that position. In the Ninth Circuit case, that was a case that had some similarity to this one. It was a branch of Sufism in which there were two competing branches for control of the faith. They wanted not only control of faith, but also control of trademark rights. And the court said in that case, well, the trademark dispute, we can adjudicate that, similar to the breach of fiduciary duty claims. This court, you know, a court can adjudicate those. But for deciding who is going to be the next leader of this religion, we must stay out and we cannot apply, the court said, we cannot apply neutral principles when we're dealing with the succession of a religious leader or internal church government. Now looking at the record, UntoInfinity and Sirisingsav Corporation are both non-profit organizations. Sirisingsav is explicitly incorporated as a religious non-profit. Both the articles and bylaws show that these organizations, while they may have some secular administrative functions, just like any church board does, needs to approve financial statements, may, you know, agree on leases, but they also, the board, has control of appointing the next Sikhtar Sahiba. Sirisikhtar Saba, excuse me. That's the chief religious authority of the Sikhtarma faith. So whoever is in charge of these boards, they get to pick the next religious leader of this faith. Moreover, plaintiff's complaint acknowledges that UntoInfinity controls Sikhtarma International, which is a religious California corporation, and controls Sikhtarma Education International. SDI, as the plaintiffs admit in the record, is essentially the ecclesiastical arm of the faith, and S-D-E-I is the church school. So again, UntoInfinity and Sirisingsav Corporation get to populate the boards of the ecclesiastical and educational arm of this faith, and the ecclesiastical arm gets to decide who the next ministers are. It gets to decide if a gurdwara, which is their church, is going to be commissioned. So essentially, we're not talking about the plaintiffs asking to be on the boards of for-profit operating companies. They're not asking to get on the Yogi Tea Board. They're not asking to get on the Akal Securities Board. That would be an entirely different question for the court. What they want, they want to be on the board that is at the very head of this religion, and controls every single religious, non-profit, and for-profit company in this family of companies. And that is something that the Constitution simply does not permit. That is our church autonomy doctrine. That is a broader doctrine than the ministerial exception. However, if the court cares to look at the ministerial exception, the ministerial exception applies in this case as well. In Hosanna at Tabor, the court was also not addressing a question of a minister in the terms of a priest or a preacher. It was addressing a claim by a teacher. It was addressing an employment claim. And in that case, the court said, well, we're not going to look at whether this person had the title of teacher or title of minister. We're going to do a three-part flexible test. And that test essentially asks three questions. How does the church hold this person out to the public? How does this person consider their own job? And what are the functions of the job? And if we conclude that those are ministerial, then we're going to apply the ministerial exception, regardless of what kind of claim this is, regardless if it's a state claim, regardless if it's a federal employment claim. If the ministerial exception applies, then we're going to say we cannot hear this case. And when... Let me go back a moment. I'm looking at the 1999 opinion, the mock-top. The mock-top? Right. Yes. That seems to allow a lot more room for determination by neutral principles in a situation like this. Why is that not applicable here? Am I in the first part of the opinion? Because the first part of the opinion deals with the trademark dispute. And the court says this is a property dispute. In a property dispute, we can apply neutral principles. And so we're going to allow the trademark dispute between these two competing factions of a religion to go forward, and we're going to say that we can make a ruling on that. We're not arguing with that here, Your Honor. What the opinion went on to say below is it said, oh, we also need to address one of the specific claims for relief. And that specific claim for relief, I think I have a cite for you. It's at 1225 in the opinion. It says... Excuse me. Let me look here. Mock-top at 1250. At 1250. What it says is that the determination of rights within the Shah-Matsudi Corporation presumably may be determined by referring to the corporate charter. A shaman would be having adopted certain state and federal legal structures that are encompassed by the civil court now to apply to those structures the secular law that governs them. That's what it says. At 1250... I'm reading from 1250. Okay. I don't have it. I can grab the case, but I know it concludes that we cannot... Essentially, one of the requests for relief in that case was to not only let us decide this trademark dispute, but decide who is the leader here. Decide who is the leader of our religion. And the court says that is one piece of the relief that we cannot do because we cannot determine religious succession by neutral principles. And that is essentially what we are advocating here, Your Honor, is that on religious succession, who controls these non-profit religious boards? That is something the church... It actually doesn't even decide that. It's just that the district court may find that it cannot determine whether such a controlling decision has been made by the order without it duly tangling itself in doctrinal issues. So it seems to say... And I'm just wondering why that isn't the appropriate rule. It doesn't appear that... Although there is a requirement here that certain people, that people on these boards be ministers or some of them be ministers, at least so far there doesn't seem to be a dispute about that requirement as to who should be on the board. So if the dispute is just you took a piece of paper that said I'm supposed to be on the board and you tore it up and you don't have any right to do that and I should be on the board because my husband said I should be on the board, why is that a religious dispute? There's two, briefly, because I'm out of time, two reasons why that's a bad rule to adopt particularly on these facts. Why is that a rule that we've already adopted, number one? And number two, what's wrong with it? What's wrong with it is this is a religion that has moved on. There have been boards, there have been successor boards since this case settled in 2012. There are a board of directors of the chief religious organizations. I don't know if that's the First Amendment reason. I mean, in fact, if anything, the fact that there was, that the current board is not the board that was originally put in place suggests that there's less, it was the result of illegal proceeding. I understand you say they did this themselves, but they did it as part of resolving a legal dispute that already existed. So that, there's a sort of lack of purity here already as to what the, not involvement of the civil courts as to who's running this place. If this court decides or allows to be decided that a new board needs to be in control of this religion, the court will essentially be giving the Sikh Dharma religion leaders that it does not want. And will give control of all non-profit and for-profit entities to people it does not want to control its religion. And that is precisely what the First Amendment church autonomy doctrine and ministerial exception prevent from happening. Even if the, in the course of doing that, there is nowhere near any religion doctrine in deciding whether it should be these people or those people. The Serbian Eastern Orthodox case, Supreme Court case, said we are rejecting the arbitrariness exception to church autonomy. We are not even going to look at whether or not the religious entity itself followed its own rules. And here's... Our opinion in this case I'm reading from is just wrong. Well, I think Mt. Tom stands for the same proposition that I'm advocating. But if the court is reading it otherwise, then it is wrong. And Serbian Eastern Orthodox applies. And here's why. If the new pope, the bishops come around and the new pope is to be elected, and we wait to see the smoke. And somebody then elects, and a new pope is elected. And then somebody within the bishops comes in and says, now if I was not the right person, I'd like to bring a case before this court and have the new pope put in charge. A court cannot get involved into that, that kind of a dispute. And that is why the arbitrariness exception was rejected by the court in Serbian Eastern Orthodox. And the court should stick with that ruling in this case because the bad guys are gone. This fight has not been hijacked any longer. The bad guys are gone. The new guys are in. Men and women are leading this religion. They've been leading it for several years. And the community has moved on. I think you're done. Thank you very much. Thank you. Sir. Thank you, Your Honors. Quickly, if I can go through some points that were raised by Mr. Southwick. With respect to the standing, with respect to SSSC, the court considered and rejected the challenges by the defendants. It is not true that the court did not consider. Regarding the claim that the plaintiffs are seeking absolute control over the board, that's simply false. What the plaintiffs are seeking is for the implementation of Yogi Bhajan's directive, which was to appoint 15 members to the board, of which the plaintiffs are only four. So that's simply not true. The argument that the plaintiffs are not disinterested is a factual argument. It's not an argument that could have been decided during a challenge to the pleadings. There simply is no basis for. Well, but this is the kind of decision as to which facts can be taken into account, right? I'm sorry, Your Honor. This is the kind of decision as to which facts can be taken into account at this juncture in work. In other words, in order to decide whether the person is a proper derivative plaintiff, there is no problem with actually using facts to do that, is there? Agreed, but not at the pleading stage. That's typically done after the pleading stage, after some discovery has been achieved and something has been provided upon which to make those kinds of determinations. At the time of a Rule 12 motion, the only thing that can be considered is what's before the court. That's true of 12b-6, but it's not true of other aspects of 12b. 12b-1 also provides the same. You can't go beyond the pleadings. You can only go beyond the pleadings if you want to convert to summary judgment. The Court did not do that. The remaining issues, Your Honor, that are very significant, not all of the derivative claims that the plaintiffs are bringing in this case were addressed in the State courts. Therefore, they cannot be mootnesses to those that were never raised there. I'm sorry? He agreed with that. The approval and the settlement was done by persons who lacked authority to do so because they had been already determined to have violated their fiduciary duties, by a new group of private plaintiffs who were appointed by persons who did not have authority to appoint them, and that appointment was in violation of the bylaws that said the only successor board is the one that Yogi Bhajan directs. There's no other. So we have a fundamental problem that the suggestion is that, well, these people settled and therefore the settlement controls it doesn't. The State court case, Your Honor, is correct. You're now out of time, so please wrap up. Thank you. The State court case sought a lot of the relief that the plaintiffs sought here, and you are right. The State court, if Judge Mosman's ruling stands and the State court's action should never have proceeded, Your Honor, there are numerous errors of fact in law. There are determinations by the court that should not have been made at the pleading stage. The plaintiffs have legitimate claims that they should be allowed to pursue.  Thank you very much. We thank all of you for your arguments in a complicated and nuanced case, and the case of Puri v. Kalsa is submitted, and we are in recess. Thank you very much. I will say I appreciated both counsel's organization and crispness of the presentation. Thank you.
judges: Fisher, Berzon, Watford